## BELLOWS *v.* COPP.

The proof of the existence of .all the parties whose agency is required in the execution of a deed, is included in the proof of its due execution.

An original deed, with the official certificate of record indorsed upon it, is evidence in the chain of title, in cases in which an office-copy is evidence.

The testimony of one that he holds the office of notary public in another State, and executes the functions of that office, is competent and sufficient evidence of his authority to take the acknowledgment of a deed.

In deriving a title from a public grant, it is not required to prove a compliance on the part of the grantee with the conditions in the charter.

A grant of land, by a government competent to make it, carries with it a seizin, and no entry is needed to perfect the conveyance; nor is any further act of the government recognizing its validity necessary. An omission for a long series of years to include, in the apportionment of taxes, the land so granted, does not impair the effect of the grant.

A grant by the State of all its right and title to certain lands included in a prior grant, conveys no part of such land.

An objection, taken at the trial, that a caption of depositions is illegal, is insufficient, unless it specifies the illegality.

A misdescription of land devised will not avoid the devise, if there be sufficient to enable one to find the land.

The Court of Common Pleas may, at their discretion, permit a defendant to file a brief statement at the term at which the action is tried.

In order to establish a claim for betterments, the jury must find the occupation to have been *bona fide;* and if the question have not been submitted, a new trial may be ordered for that purpose.

Bellows *v.* Copp.

WRIT OF ENTRY, to recover 2000 acres of land in this county, called Martin's Grant. The writ was dated September 28, 1841. The defendant pleaded the general issue; and at a subsequent time, by leave of court, and upon payment of costs, the plaintiff objecting, filed a brief statement, claiming betterments upon 100 acres of the demanded premises, being the easterly half of two hundred acre lots numbered one and two, as described in said brief statement.

To support his claim, the plaintiff offered an authenticated copy of a grant or charter from John Wentworth, then governor of the province of New-Hampshire, to one Thomas Martin, of Portsmouth, dated January 25, 1773, recorded in the office of the Secretary of State, February 24, 1773, and in the registry of deeds in Coös, May 29, 1841; a copy of a plan of survey, which had also been filed in said Secretary's office; also an office-copy of a quitclaim deed from said Thomas Martin to John Brown, of Providence, Rhode-Island, dated April 27, 1779, acknowledged the same day, and recorded in said Secretary's office, December 27, 1780, and in the registry of Coös, May 29, 1841, conveying said Martin's right and title to the same premises; also a paper, purporting to be the original grant or charter, on the back of which was the original deed from Martin to Brown aforesaid; and evidence tending to prove that the demanded premises were the same described in the aforesaid papers.

To the admission of the above evidence the defendant objected, because it does not appear that any such person as Thomas Martin, the grantee, ever existed; or if there did, that he or any person under him ever performed the conditions of the charter or grant, or ever made any claim or entry upon the premises till 1839; and because in consequence thereof, if the charter was originally valid, it is now a nullity, on account of *non user* or abatement, and the legislature had a right to so treat it, and have so

treated it by not recognizing it as "Martin's Grant," in any apportionment act, nor by assessing any taxes upon it, or upon the inhabitants living thereon, till 1840, except in 1794. The defendant further objects to the admission of the copies as competent, and to the originals, unless their execution is proved, and because it does not appear that they were duly and legally recorded; but the court overruled the objections and admitted them. The plaintiffs then offered a certified copy of the last will of John Brown, dated June 12, 1802, proved in Rhode-Island, December 6, 1803, and filed in the probate office in Coös, September 6, 1827, devising to Alice Mason, wife of James B. Mason, and daughter of John Brown, the demanded premises as therein described, and which were subject to a life-estate in Sarah Brown, wife of said John, and evidence tending to show the decease of said Sarah, and that the only surviving heirs of said Alice and James B. Mason are their two daughters, Sarah B. Eaton, wife of Levi C. Eaton, and Rosa Ann Grosvenor, wife of William Grosvenor.

To the deposition of John B. Hanishoff, the defendant objected on account of the illegality of the caption. The plaintiff then introduced a deed from Levi C. Eaton and Sarah, his wife, and from William Grosvenor, and Rosa Ann Grosvenor, his wife, to the plaintiff, dated May 17, 1841, acknowledged the same day, and recorded in the registry of Coös, May 24, 1841; and also the deposition of Henry Martin, tending to show its execution; to the admission of which proof the defendant objected, because the testimony of Martin, before whom the deed purports to have been acknowledged, that he was a notary-public, qualified to take such acknowledgment in Rhode-Island, was not competent evidence of that fact; but the court admitted the deed and deposition. The defendant objected to the admission of the copy of the will of John Brown, because the devise therein contained is too vague

and uncertain to convey any title to the demanded premises; but the court overruled the objection.

By the will, the testator devised to his daughter, after the decease of her mother, and to her heirs and assigns, the lands bought of John Wendell, of Portsmouth, in the township of Seville, with the two locations bought of Treadwell and Martin, as per schedule No. 5. Schedule 5 is as follows: "The land bought of John Wendell, Esq., of Portsmouth," etc., "with the two locations bought of Mr. Treadwell and Mr. Martin, one of eight thousand seven hundred forty acres, lying," etc., "and the other of two thousand acres, on the Connecticut river, and I think is called Shelburne Addition, but the said locations being in the iron chest, a reference to them is recommended."

To prove an entry, the plaintiff offered evidence tending to show that in the latter part of May, or early in June, 1839, William Grosvenor gave to George P. Meserve, of Jackson, the aforesaid paper, purporting to be the original grant, with the deed from Martin to Brown thereon, and employed him as his, Grosvenor's agent, to find out the location of the premises therein described, and take charge of it for him, he claiming to own the premises as heir to said John Brown; that in the winter of 1839 and 1840, said Meserve went up to see if any person was committing depredations thereon, and he then found Samuel Copp and Levi Copp cutting timber on the demanded premises, near the Peabody river, but whether on lots number 1 or 2, or either of them, he did not know; and he then told them that Grosvenor claimed the land, and forbade them to meddle with it or the timber thereon; that in October, 1840, said Meserve went with A. N. Brackett, a surveyor, who was attempting to survey and ascertain the lines of Green's Grant, so called, which lies south of and adjoining to the demanded premises, and they ran around the demanded premises in order to find the north line of Green's Grant, and found the north-west and south-

west corner bounds of the demanded premises—an ancient spotted line, on the north-west and south sides of it.

The defendant then offered a resolve of the legislature of New-Hampshire, approved July 15, 1824, directing the Treasurer of this State to convey to Daniel Pinkham, upon the conditions therein named, all the right, title and claim of this State to all lands belonging to and being the property of this State, situated, etc., and all the unlocated lands belonging to and being the property of this State, etc.; a resolve of July 27, 1833, in favor of Daniel Pinkham; a resolve of July 4, 1834, in favor of the same, authorizing the Treasurer to make a conveyance of the State's right and title to the same lands; a deed from A. B. Kelly, State Treasurer, to Daniel Pinkham, in accordance with the foregoing resolves, dated June 22, 1835, acknowledged the same day, and recorded in the office of the Secretary of State, June 25, 1835, and in the registry of Coös, November 15, 1842, and evidence tending to prove its execution; a deed from Daniel Pinkham to Thomas Rogers, Jr., dated October 6, 1835, acknowledged the same day, and recorded March 17, 1836; a deed from Thomas Rogers, Jr., to Samuel Copp, dated May 9, 1839, acknowledged September 19, 1840, and recorded November 12, 1842; a deed from Samuel to William Copp, the defendant, dated November 25, 1843, and acknowledged and recorded the same day; all of which conveyed one half of lots numbered 1 and 2 in Pinkham's Grant, the same on which the defendant claims betterments, and is part of the demanded premises, the last of which deeds was made and executed since this trial commenced, and was delivered to William Wentworth for the defendant, who was not then present, but afterwards appeared and accepted it.

To the admission of the above mentioned deeds the plaintiff objected, because the deed from Pinkham to Rogers, and those from Rogers to Samuel and from Samuel to William, purported to convey only one hundred acres

of the premises demanded, the defendant not having disclaimed the residue, and because the deed from Samuel to William Copp was not made till since this trial commenced and was not legally delivered; but the court overruled the objection.

The defendant then offered evidence tending to show that Daniel Pinkham, in 1822, commenced building a road mentioned in said resolves, and in the deed from Kelly to him, having been assisted by subscriptions from sundry persons, and built the same thereafter from Jackson to Gorham through the demanded premises, and through lots number 1 and 2; that in 1826 he entered upon and marked out and surveyed out a tract of land called Pinkham's Grant, extending 160 rods on each side of the road, so built by him the whole way through the demanded premises now called Martin's Grant, and marked off the lots upon each side of the road only, and marking their lines some three or four rods from the road into the woods, and numbered lots from north to south. Numbers 1 and 2, the half which the defendant claims, lie on the northerly side of the demanded premises, and within it; that in 1830 said Pinkham cleared land and put up buildings upon the road, and within what is now claimed as Martin's Grant, and lived there with his family till 1836, and fenced and cultivated a farm therein, and cut timber on other parts of it, claiming it as his own; that in 1834 he verbally agreed with Thomas Rogers, Jr., to sell him that part of lots number 1 and 2 which lie east of the road, and that in pursuance of said agreement Rogers entered upon the premises and cleared several acres, and in the fall of the same year erected a house and barn, and moved into the house in the spring of 1835, and took a deed as aforesaid, in October, 1835; and that he and Samuel and William Copp have successively occupied the place ever since. The evidence further tended to show that Pinkham never had any knowledge of Martin's Grant till June, 1834, when he

saw the plan in the Secretary's office. The defendant further offered an act of the legislature, authorizing the appointment of a land agent, or commissioner, passed June 22, 1831, and a copy of a quitclaim deed from James Willey, as such commissioner, to Meserve and Thompson, dated June 28, 1835, acknowledged August 3, 1835, and recorded May 23, 1840, in the registry of Coös; and a copy of another similar deed from said Willey, as such commissioner, to Alpheus Bean, dated May 22, 1832, acknowledged same day, and recorded June 14, 1842, in the office of the Secretary of State, and in the registry of Coös, June 29, 1842, and evidence tending to show that the above mentioned deeds from Willey contained within their limits the whole of the demanded premises except that part called Pinkham's Grant, and claimed by him. The defendant offered evidence tending to show that said Willey acted as such land commissioner, and had a commission purporting to be from the Executive of the State, but no commission or record of appointment was offered.

To the admission of this evidence to show him such commissioner the plaintiff objected, but the court admitted it. The plaintiff also objected to the admission of the deeds, as incompetent evidence, and especially that to Thompson and Meserve, it not having been recorded in the Secretary's office; but the court admitted them, not to show title in the grantees, but only as evidence of the acts of the State and authorities thereof in relation to Martin's Grant. The defendant then offered a resolve of the legislature, passed January 22, 1829; one approved January 4, 1832; one approved June 13, 1837; and an act passed December 22, 1840, for the apportionment of taxes, etc.; and an act passed July 4, 1833, classing the inhabitants of Pinkham's Grant with Jefferson and Randolph for the choice of a representative; and a resolution of December 4, 1840, classing Pinkham's Grant with Jackson for the same purpose; and an act of January 13, 1827, authorizing

the inhabitants of certain unincorporated places to choose town officers; a resolution of December 17, 1840, giving to Pinkham's Grant a copy of the statutes. The evidence tended to show that the Pinkham road did extend through ungranted land belonging to the State, and other than the demanded premises, and through Green's Grant.

The defendant then offered sundry proceedings, under which several sales were made of " Pinkham's Grant" for taxes assessed on the territory so denominated, to all of which the plaintiff raised the objection that the description did not embrace any part of the premises described in the writ.

The court instructed the jury that the grant to Thomas Martin, and the chain of title from him to the plaintiff, were legal and valid, and that the same were not shown by any competent evidence to have been annulled or avoided by reason of abatement or *non user;* that the conveyance from the State to Daniel Pinkham did not describe the premises therein granted and conveyed, so as by any legal construction to include the demanded premises or the tract granted to Martin; that the proceedings in taxing and selling Pinkham's Grant by the sheriff of Coös county did not so describe the premises so taxed and sold, as necessarily, by a legal and fair construction of the papers, to include any part of the demanded premises, and consequently the plaintiff was entitled to recover the lands demanded. But that the acts and resolves of the legislature, and the deed from the State Treasurer conveying to said Pinkham all the lands belonging to the State, and not before granted, lying one hundred and sixty rods on each side of the road built by him, and his entry thereon and survey of the same, from 1830, without any knowledge of the existence of Martin's Grant, till 1834, and no claim being made under said Martin's Grant till 1839, and then only by Grosvenor in his own name, who in fact was not the owner thereof, were a sufficient occupation of the

premises under a supposed legal title to give to said Pinkham and those claiming under him a right to claim betterments, if any they had made; that as the defendant and his grantor and Rogers claim by a title derived from Pinkham, and entered under him, they might be considered as holding from him until he conveyed, and that, although the defendant had no deed till after the commencement of this suit, yet his deed when he did receive it gave him the right which his grantor had, and all the privileges which his grantor might have claimed if he had not conveyed, and the action had been brought against him; and therefore the defendant, if he and those under whom he claimed had occupied it six years before the commencement of this suit, supposing their title to be good, had a right to claim betterments, and they might assess the value of the improvements made upon the tract included in the defendant's deed, and return a verdict for that amount in favor of the defendant.

The jury returned a verdict for the plaintiff for the demanded premises, and for the defendant for $104.17, for betterments; and the plaintiff excepted to the foregoing rulings and instructions of the court concerning the betterments, and moved that the verdict be set aside, as it respected them.

*Wells* and *Young*, for the plaintiff.

*Bellows*, for the tenant.

GILCHRIST, J. There are several objections presented in this case, which must be examined. The plaintiff derives his title to the land described in his writ from a royal grant, under Governor Wentworth to Thomas Martin, dated the 25th day of January, 1773, which was produced and proved. Upon this the defendant interposes the objection that no proof is made of the existence of

such a person as Thomas Martin, named as the grantee in the deed. The answer to this objection is, that the evidence which proved the execution of the grant established of necessity the existence of the grantee. The law which raises a presumption in favor of the regular execution of deeds that are in the chain of the title of the party producing them, and which bear the ordinary indications of having been regularly executed, acknowledged and recorded, involves in that presumption the existence of all the parties, witnesses and magistrates, whose agency is necessary in the transactions so proved.

Another objection is to the title supposed to have been acquired under the grant, which, it is said, fails for the want of evidence of a compliance, on the part of the grantee and those claiming under him, with the conditions annexed to the grant. Whether there has been such a compliance is a question that cannot properly be tried in this form, for the reason that a grantee of all the right and title which the State had after the grant to Martin, does not acquire the right to take advantage of such non-compliance, as is supposed, and to exact the forfeiture; and, also, for the reason that such a forfeiture must be claimed, and pursued by proceedings instituted for the express purpose. *Sperry* v. *Sperry,* 8 N. H. 477.

No entry was necessary on the part of Thomas Martin, or others, under such a grant, for the purpose of acquiring a seizin of the land, it having been held that a grant, by a government competent to make it, carries with it seizin. The point arose in *Enfield* v. *Permit,* 8 N. H. 512.

Neither does such a grant lose its effect by reason of an omission of the party purchasing to enter upon and use the land. If any such condition were annexed to the grant, advantage must be taken as for the breach of conditions in general. If not, and there be no adverse occupation, there is no reason which requires the grantee to use it otherwise than he is required to use other land—for the preservation of his title.

That the legislature have since omitted to recognize the grant, may be owing to many other causes than a disposition to avoid it. Such a grant does not require for its preservation repeated acts of recognition, any more than does the grant of an individual. When it was made, the title of government to it, as property, passed; nor could it return again, unless by escheat, without some act for its recovery. The point arose in *Bellows* v. *Elkins*. And it must be held here, in conformity with the decision in that case, that the omission to include the granted territory in any of the apportionment acts, whether such omission were accidental, or caused by an intention on the part of government to vacate the charter, was wholly without any such effect in law, to disturb the rights of parties acquired under the charter.

So far as the case discloses the nature of the objections made by the defendant to the use of copies, they appear to be without just foundation. Copies of deeds and other conveyances in the chain of the party's title who introduces them, are the common evidences of the transmission of the title, and when properly certified, being in the proper form, are competent as such. An original deed, appearing, by an official certificate upon it, to have been regularly recorded, is upon the same footing, and like a copy admitted in common practice. *Pollard* v. *Melvin*, 10 N. H. 554.

An objection is made, that the caption of Hanishoff's deposition is not legal; but the case does not show the nature of the defect pointed out, and it is too late for parties to specify their objections after the case is removed to this court. They should be distinctly stated, that they may be noted at the trial. The general and vague objection that the caption is illegal, cannot prevail.

Of the official character and qualification of one who assumes to take a deposition in a foreign jurisdiction, it is held that some evidence is necessary; but proof that he

Bellows *v.* Copp.

exercises the functions of a magistrate who is ordinarily qualified to take a deposition, is sufficient evidence of his official character, *prima facie,* to entitle the party to read the deposition. The reason appears to be applicable to the case of an acknowledgment of a deed. The title by which one in a foreign State holds an office whose functions he publicly and habitually discharges, need not be made the subject of inquiry, unless occasion is furnished by some evidence that the office is held by usurpation; the general rule being that all who are proved to have acted as public officers, are presumed to have been duly appointed as such, until the contrary appears. Gr. Ev., secs. 83, 92. The evidence that the person assuming to be a magistrate is such, *de facto,* may as well come from his own testimony as from any other witness. He has no greater inducement to testify in favor of the validity of his own acts, than has an agent who has compromised himself by exercising the duties and functions pertaining to that relation. *Steele* v. *Stone,* 12 N. H. 90.

The will of Brown contains some matters of misdescription relating to the grant in question. It describes it as upon Connecticut river, and as called the Shelburne Addition; but these matters are stated merely as impressions at the moment upon the mind of the testator, and are accompanied with references to other sources of information, that indicate clearly that it is not his intention to limit the grant to that description. If, therefore, enough is contained in the will to identify the land, it will pass, notwithstanding the error of the testator in the particulars adverted to. Shep. Touch. 246, and note 1. The land was correctly described in the will as to its name of "location," the quantity embraced, and the party from whom he derived it. These were properly left to the jury to be met by such evidence as the defendant might adduce to show that other land existed to which the description might apply.

The exceptions taken by the defendant to the plaintiff's title are, therefore, overruled.

The plaintiff excepted to the rule of the court below, allowing the defendant to file a brief statement at an advanced state of the progress of the cause; but this was clearly within the discretion of the court, and it has often been decided that this court will not revise such matters of practice.

Pinkham's Grant embraced, by its terms, such land only as the State owned at the time of making it. The resolves, and the deed of the treasurer, made in pursuance of them, are explicit on that point. Martin's Grant, having been earlier, was not, of course, cut in upon by that made to Pinkham. The sales by public officers of "Pinkham's Grant" did not, therefore, disturb the title to any lands which had been previously conveyed by the State.

The statute of betterments requires that the party claiming an allowance for them must have been in possession six years, by virtue of a supposed legal title, under a *bona fide* purchase.

The instructions of the court were, that the acts and resolves of the legislature, conveying to Pinkham the lands described, and his entry and survey under the grant, with the subsequent clearing and occupancy till 1839, without notice of Martin's Grant, amounted to a sufficient occupation of the premises, under a supposed legal title, to give Pinkham, and those claiming under him, a right to betterments. The statute requires that the possession should be in good faith, and under a supposed legal title; and there is evidence which rendered it necessary that the jury should have inquired whether the possession in this case bore that character. This inquiry was not directed by the instructions, and the case must, therefore, be sent back for trial upon this point. The evidence that Pinkham, as early as 1834, knew of the existence of Martin's Grant, may not be conclusive against him upon the ques-

tion of good faith; but was sufficient to raise the ques-
tion, and, independently of the fact of there being evi-
dence on both sides, the statute requires the good faith of
the party to be established by a verdict. To settle this,
therefore, there must be a

*New trial granted.*